UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       No. 1:22-CR-160

    vs.                               Hon. Robert J. Jonker
                                          United States District Judge

BRANDON HUU LE,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Adolescence is difficult enough without the increased traumas—sexual violence, bullying, and the highest depression rates in a decade—that our teenage girls are experiencing. *See* CDC, [Youth Risk Behavior Survey: Data Summary and Trends Report 2011–2021](#) (Feb. 15, 2023); Caitlin Flanagan, *Hysteria and the Teenage Girl*, N.Y. TIMES (Jan. 28, 2012) ("In many respects a teenage girl's home is more important to her than any time since she was a small child. She also needs emotional support and protection from the most corrosive cultural forces that seek to exploit her when she is least able to resist."). In these years, parents work to maintain nurturing home environments and celebrate minor victories in fleeting moments of normalcy.

Defendant invaded girls' homes and schools through social media and online messaging platforms. He blackmailed them into sending him child pornography by misrepresenting his age and identity and exploiting their adolescent curiosity, their personal information, their insecurities, and their hopes and dreams for the future. He threatened victims across the country:

- "Either f-----g send the pic now or I'm not gonna give your [sic] anymore chances . . . I think you want me to mail to your house now . . . I think you want your parents to see those nudes you sent me . . . Maybe your sisters want to see what a good slut you are."

- "[D]o you want me to post your nudes?  Do you want to ruin your chances of ever going to a good college?  Do you want to ruin your chances of getting a good job?"

- "You better stop crying unless you want [your parents] to know."

Presentence Investigation Report ("PSR") ¶¶ 18, 54, 56, PageID.125, 135.

Defendant used vulgar threats to force young girls to engage in an escalating series of degrading, humiliating, and emotionally scarring acts for his own gratification.  *See* PSR ¶ 19, PageID.125 ("You are going to keep sending until I c-- or am satisfied.  If I were you everything I send would be sexy and horny as possible for me to c-- faster ok?" (Pennsylvania Victim)).  Defendant was unique in that he followed through with some of these threats, including by e-mailing explicit pictures to one victim's college admissions department.  *Id.* ¶ 14, PageID.123.  Defendant's child pornography crimes, part of an emerging "sextortion" trend, were heinous and require a serious guidelines sentence.

I.      **DEFENDANT'S CONDUCT**

Defendant used online aliases on popular social media and messaging platforms to trawl for young girls.  He assumed the names "Ty" and "Ty Addison" and created usernames—"addityyt," "tyaddibaby," and "tyaddinude"—that he registered with dummy e-mail addresses to further conceal his identity.  *Id.* ¶ 15, PageID.123–24.  He began extorting minor girls for sexually explicit images and videos when he was in middle school and continued to extort girls for child pornography after he turned eighteen.  *Id.* ¶ 37, PageID.131.  Between December 12 and December 15, 2019, days before FBI executed a search warrant at his residence, Defendant, using the "addityyt" moniker on Snapchat, was in contact with at least fourteen girls, including minors, from whom he requested and received sexually explicit materials.

2

Defendant followed an escalating pattern to obtain child pornography. He initiated sexual conversations with a victim, screen-shotted the exchange, and threatened to circulate the conversation unless the victim sent him a sexually explicit picture. *Id.* ¶ 13, PageID.123. Once he received the picture, Defendant threatened to release the picture unless the victim sent him a sexually explicit video. *Id.* Once he received the video, Defendant threatened to release the video unless the victim participated in a livestream, engaging in sexual acts that Defendant directed in a chat as he masturbated with his face hidden. *Id.* Defendant bolstered his threats with knowledge—as he often told victims—about where they lived, where they went to school, and who their friends and followers were on social media. *Id.* ¶ 13, 54, PageID.123, 135; Snapchat Example, attached hereto as Exhibit 1. Defendant's conduct spanned the entire continental United States. PSR ¶¶ 18, 28, 55, 57, 58, PageID.124, 127, 135, 136.

Victims who responded to Defendant could not imagine the relentless and cruel onslaught that Defendant would inflict. Defendant's threats targeted his adolescent victims' fears and insecurities about their futures, their relationships, their reputations, their bodies and bodily autonomy, and their safety. Defendant forced victims to turn on apps' location sharing features so that he knew where they lived, giving him further leverage that he exploited. *See* Exh. 1. Defendant demanded to see victims' faces in pictures, videos, and livestreams so that they could be identified and, as a result, easier to exploit.

Defendant bombarded victims multiple times a day—and sometimes over several days—while they tried to live normal adolescent lives in their homes, in cars with their families, at doctors' appointments, at dinner with their parents, and during classes at school. *See id.* Victims begged Defendant to stop and expressed the trauma he was inflicting. *See* PSR ¶ 27, PageID.127; Exh. 1. Parents intervened and told Defendant to stop. He refused. Instead, when victims blocked

Defendant, he contacted them on other platforms and messaged their friends and family, showing victims that he knew their networks and could follow through on his threats if they did not comply with his demands. *See* Instagram Contact with Victim's Sister, attached hereto as Exhibit 2. The language Defendant used was disgusting and the abusive acts he forced on his victims, having cornered them online, were vile.

The victim impact statements show the devastating and lasting damage Defendant caused his victims and their families.[1] He inflicted physical and emotional injuries that changed victims' personalities, their perspectives about the world, their family dynamics, and the courses of their lives. When Defendant was done with his victims, they were not done with him. They lived for years not knowing who he was, where he was, how he knew details about them, and why he targeted them. They spent years not knowing—and still may not know—whether Defendant kept the pictures and videos, whether and how far those pictures and videos were circulated, and whether those pictures and videos will resurface somewhere, sometime in the future. Defendant's victims have to live with these uncertainties in addition to the suffering he caused.

II.     **ARGUMENT**

   A.     **The Nature, Circumstances, and Seriousness of the Offense Warrant a Serious Guidelines Sentence.**

Defendant obtained and possessed child pornography through the serial extortion and sexual exploitation of minors. In a small window of time—Defendant's Snapchat use in the four months between August 2019 and December 2019—Defendant used the "addityyt" account to contact 270 girls on Snapchat alone. PSR ¶ 12, PageID.123. The Court has unique insight into what happened when girls responded. The Court can see, from the PSR and examples of

---

[1] Jane Doe's family respectfully asks that the government be permitted to read Jane Doe's victim impact statement at sentencing.

Defendant's Snapchat conversations, his callous and despicable treatment of victims. *See* Exh. 1; Snapchat Example, attached hereto as Exhibit 3. Defendant knew his victims were minors, knew he was committing crimes, and recognized the damage and suffering he caused. *See* Exh. 3 ("[T]his is literally child pornography! [P]lease just stop!"). He was indifferent to victims' pleas ("[P]lease just stop! [M]y life is already hard enough! [I] don't want anymore trouble." "Then send until I'm satisfied."), their cries ("Are you crying baby? Let me see them tears."), and their expressions of suicidality ("I literally wanna kill myself right now." "Then send it now."). *See id.* Controlling and hurting young girls was the point.

Even worse, the child pornography that Defendant possessed was pornography he made by forcing young girls to participate in their own victimization. He manipulated victims into abusing themselves for his own pleasure. This behavior was dangerous:

> [p]hysical and sexual trauma and abuse of children, when combined with a psychological element of abuse, is extremely dangerous. Psychological maltreatment that occurred alongside physical or sexual abuse was associated with significantly more severe and far-ranging negative outcomes than when children were sexually and physically abused and not psychologically abused . . . . Moreover, sexual and physical abuse had to occur at the time same to have the same effect as psychological abuse alone on behavioral issues at school, attachment problems, and self-injurious behaviors . . . .

Am. Psychological Ass'n, *Childhood Psychological Abuse as Harmful as Sexual or Physical Abuse* (2014).

Defendant's crimes were life-changing for his victims and their families and will have ramifications that are difficult to predict. At a time when they should have been focused on creative expression and school essays, Defendant's victims wrote impact statements in federal court about their abuse, not knowing who would read them or how they would be received or judged. At a time when adolescents are only beginning to learn about their bodies, Defendant told young girls, in the worst possible way, that their bodies were not their own and existed for the

5

pleasure of others.  Adolescence requires navigating physical and emotional changes, handling internal and external pressures, and adopting and shedding of labels toward the development of a fragile identity.  Defendant forced more labels on young girls—including "victim"—and saddled them with the unimaginable weight of the consequences.

### B. General Deterrence and the Need to Promote Respect for the Law Further Warrant a Serious Guidelines Sentence.

Sextortion schemes are on the rise in this district and across the country.  In fiscal year 2022, the Department of Homeland Security received approximately 3,000 sextortion tips.  *See* Dep't of Homeland Security, *Sextortion* (Mar. 13, 2023).  In December 2022, the FBI issued a public safety alert about sextortion, noting that schemes are increasingly global in scope and at least twelve victims died by suicide.  *See* FBI, *International Law Enforcement Agencies Issue Joint Warning About Global Financial Sextortion Crisis* (Feb. 7, 2023).

Online predators know they can evade detection—as Defendant did before the Pennsylvania Victim came forward—with fake identities concealed through layers upon layers of dummy e-mail accounts and false information.  As this case shows, law enforcement must expend considerable time and effort to disentangle this information, giving online predators more time to victimize untold numbers of people.  The Pennsylvania Victim came forward in August 2019, and, with diligent investigation, FBI executed a search warrant in December 2019.  During that time, Defendant contacted 270 girls on Snapchat using the "addityyt" account.  PSR ¶ 29, PageID.128.

General deterrence and respect for the law are critical considerations justifying a guidelines sentence.  The Court's sentence should send a message to the public and would-be predators that child pornography and sextortion, and our children and families' needless suffering, will not be tolerated.

### C. Defendant's Age and Lack of Criminal History Do Not Outweigh the Other 18 U.S.C. § 3553(a) Factors.

Defendant has no criminal history outside of his sextortion and child pornography offenses. The facts show, however, that it was only the FBI's intervention that stopped him from blackmailing and extorting his victims. Defendant's conduct, days before the FBI's December 2019 search warrant, showed that he had no intention of stopping. He ignored victims' pleas, ignored parental intervention, ignored that he was knowingly committing crimes, and extorted young girls into sending him child pornography until the moment FBI agents knocked on his door. This was not youthful indiscretion or a normal reaction to adolescent insecurities and anxieties. *See* PSR ¶ 37, PageID.131–32. This was serial abuse, made worse by the fact that Defendant was an eighteen-year-old who knew—better than any of the adults involved in this case—how to best exploit his peers, how those threats would be received, and what he could do by taking away teenagers' safe spaces and ransoming their futures.

### III. **CONCLUSION**

For the foregoing reasons, the Court should impose a serious guidelines sentence in this case.

Dated: August 15, 2023

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

/s/ *Adam B. Townshend*
ADAM B. TOWNSHEND
Assistant U.S. Attorney
P.O. Box 208
Grand Rapids, MI 49501
Tel: (616) 456-2404