UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:22-CR-160 |
| v. | Hon. Robert J. Jonker<br>United States District Judge |
| BRANDON HUU LE, | |
| Defendant. | |
| _____/ | |

### DEFENDANT BRANDON HUU LE'S MOTION FOR VARIANCE

On August 29, 2023, this Court will sentence Defendant Brandon Huu Le, who pled guilty to one count of receipt of child pornography pursuant to a plea agreement with the government. U.S. Probation determined Brandon's total offense level to be 33 and placed him in criminal history category I, resulting in an advisory guidelines range of 135 to 168 months' incarceration, and recommended a sentence at the low end of that range. For the reasons set forth below, Brandon respectfully requests that this Court vary downward from the advisory guidelines range.

### FACTUAL AND PROCEDURAL BACKGROUND

As noted in the presentence investigation report ("PSR"), this case centers on explicit messages Brandon sent to a series of minors, each focused on the eventual exchange of sexual images. (R. 39, PSR ¶ 12-13, PageID.123.) His conduct followed a "fairly standard narrative," as he used the application "Snapchat" to exchange messages

with the minors. (*Id*.) The Snapchat application functioned according to its design, and those messages were automatically deleted after a short time (although they can be retrieved by the application's parent company, Snap, Inc.).

Brandon began extorting the images as a middle school student and continued doing so through his freshman year of college, when law enforcement discovered that "Ty Addison" (username addityyt), the Snapchat user who threatened the minors with exposure if they did not supply images he requested, was actually Brandon. Federal and state law enforcement officers converged on Brandon's home in December 2019 with warrants to search his home and devices for evidence of his crimes. When confronted by FBI agents, Brandon fully cooperated and admitted what he had done.

Shortly after the raid, State of Florida prosecutors charged Brandon, and he eventually entered into a plea agreement pursuant to which he pled "no contest" to extortion with adjudication withheld, and sentenced to a lengthy period of probation. He fulfilled every requirement, including mandated sex offender treatment. During that probation period and unbeknownst to Brandon, however, on November 16, 2022, a Grand Jury sitting in the Western District of Michigan returned an indictment against him charging him with multiple offenses. (R.1, Indictment, PageID.1-6.). He was arrested and released on bond, and later appeared in the Western District of Michigan for arraignment. On May 19, 2023, Brandon entered a guilty plea to receipt of child pornography. (R. 25, Change of Plea, PageID.3.). He was remanded to U.S. Marshals custody that day.

## ARGUMENT

This case is not a typical child pornography case, for this or any other Federal District Court. There is no doubt that Brandon committed criminal acts that resulted in devastating psychological injury for the young ladies he victimized, and that many of them continue to feel real pain and fear in their personal lives, online and otherwise. He had no right to treat them as he did.

But Brandon is not a typical Federal sex offender. He is a 22-year-old young man who fell into terrible criminal acts as a *middle school boy*, out of insecurity in his social standing, his body, and his identity. At an age when virtually all young people begin to experience curiosities and insecurities about their sexuality, Brandon retreated into an online persona and channeled his considerable intelligence and creativity to exploit his peers, with tragic results.

There is no excuse for what Brandon did to his victims. But he and his family hope that this Court will see the totality of his life – among other things, the challenges he overcame and the promise he still holds, even as a convicted felon and sex offender – and will show him mercy, even as it seeks at the same time to provide closure for the innocent young women so deeply hurt by his actions. There are myriad reasons, in short, to vary under these facts.

A.  **Applicable Law**

As this Court is aware, when sentencing a defendant, this Court must comply with the basic aims of sentencing set forth in 18 U.S.C. § 3553(a). *Rita v. United States,* 127 S. Ct.

2456, 2463 (2007). The Court should "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a); *United States v. Kimbrough*, 128 S. Ct. 558 (2007). The goals of sentencing are "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D); *Kimbrough*, 128 S. Ct. at 569. In *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006), the Court held that after *United States v. Booker*, 543 U.S. 220 (2005), a judge must impose the lowest sentence that is minimally sufficient to meet those goals, whether the sentence imposed consists of probation, time served, a mandatory minimum sentence, the statutory maximum sentence, or somewhere in between.

While courts must continue to consider the sentencing guidelines, they are no longer mandatory, and courts are only required to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and

4

providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

**B.     The Court Should Vary Below the Applicable Guidelines Range.**

As Brandon stated during his presentence interview, he feels deep regret and shame for his actions. (R. 39, PSR, PageID.132.) He explained that he has "realized that [he] did this because [he] was insecure with [his] body and wanted and escape" from his own life. (*Id*. at Page ID.131.) Even in light of that challenging self-perception, Brandon recognizes the intense harm that his actions had on his victims. As Brandon said:

> It is difficult for me to express how much I regret hurting my victims in this way . . . My choices have impacted victims whose bodies and privacy were violated. I am told many of them have needed counseling to recover from my crimes, and some may suffer from issues of trust for many years. I also have impacted everyone I love, including my parents and sister, by causing them enormous stress. No one knows exactly how my choices and this case will continue to impact my victims, but I expect many of them will need counseling and treatment to recover and find peace . . . I am devastated about what I have done, and the impact of my choices on my victims and my family.

(*Id*. at Page ID.132.)

Brandon's remorse is palpable in this statement provided to the interviewing probation officer. Instead of deflecting, placing blame, or minimizing the offense, Brandon has taken full responsibility and even empathizes with the effects that he has had on his victims.

Of course, the consequences of Brandon's actions extend beyond his victims and circle back to devastate his own family, his budding career, and his entire future. As

5

Brandon said, "I have impacted everyone I love, including my parents and sister, by causing them enormous stress . . . I know my choices have in some ways killed my career before it ever started. As a cancer survivor who was fortunate to be in remission at an early age, I wanted a career in medicine . . . Now that is all gone, and *I have no one but myself to blame*." (*Id*.) Brandon's acceptance of responsibility is thorough and unequivocal.

While Brandon's understanding and recognition of the consequences of his crime are without reservation, it is worth noting that his childhood and background have had a significant effect on his adult life. Although Brandon has a strong relationship with his mom, dad, and sister, his childhood was abnormal in several notable ways. Brandon began a battle with childhood Leukemia at only two-years old. While at a store with his mother, Brandon passed out and was taken to a hospital; shortly thereafter, doctors diagnosed him with Leukemia. Thankfully, Brandon was able to successfully fight the disease and is cancer-free today. There is no doubt that Brandon and his family are grateful that Brandon survived cancer, but his diagnosis affected him and his entire family enormously.  Brandon's sister wrote an attached letter, and, regarding Leukemia, noted that she "did not understand at the time the pain [her] brother was in, but [she] soon understood how strong he was for living through it all. Even when he was on the hospital bed awaiting procedures after procedures, he would put a smile on his face, wipe the tears from [their] mother's eyes and tell her not to cry, he will live for us." (Exhibit A, Vivian Le Letter.) The stress of that kind of disease on a young child is incalculable.

Fortunately, Brandon's childhood was stable in that his parents were actively involved in his life. But he also felt pressured to perform perfectly at school. In a letter of

6

support, Brandon's father—an officer with the Orlando Police Department—notes that, despite his cancer diagnosis, Brandon continued to relentlessly focus on school and volunteer work. (Exhibit B, Johnny Le Letter.)  Indeed, academic performance was of the utmost importance in his family.  Brandon's parents desperately wanted Brandon and his sister to avail themselves of advancement opportunities in the United States that neither of them had while in Vietnam, and Brandon put enormous pressure on himself to perform well. During this time of pressure and self-doubt, Brandon became increasingly shy, and—before he could find his niche at school—he used the internet as an unhealthy outlet.

Brandon was caught for his misdeeds in Florida in 2019.  Thankfully, Brandon immediately turned the page.  He has not engaged in any further illegal conduct since he was prosecuted in Florida. Brandon was sentenced to one year Community Control followed by five years' probation. His probation officer, David Klingenberg, informed undersigned counsel that Brandon has not had any probation violations, has been paying his fines and costs regularly, has performed well academically, and has attended ITM for sex offender treatment since October 12, 2020. (Exhibit C, David Klingenberg Email.) Mr. Klingenberg also wrote that Brandon "is attending and participating at his sessions. (*Id*.) He has never missed an office appointment and is always prompt for his appointments." (*Id*.) Brandon is a success story as a participant in the Florida court-ordered programs and compliance requirements.

This good report is in line with what others know of Brandon and his personality. Since his change of plea in this case, Brandon has continued to receive support from his

7

family and friends who, while recognizing the seriousness of the offense, also recognize the otherwise steadfast nature of Brandon's character. Brandon's mother writes that, even as a child, he was always respectful of his family, eating the authentic Vietnamese dishes cooked by his grandparents. (Exhibit D, Lien Doan Letter.) He also worked incredibly hard to graduate at the top of his class, inspired to go into medicine by the doctors that helped him as a child. (*Id.*) A friend of Brandon writes that, in addition to being a stellar student, he always set an example of kindness. As his friend says, Brandon "deserves another chance to show his kindness just as he did with me." (Exhibit E, Anthony Peregrino Letter.) That friend also reports that Brandon is a "good honest person and [he] believe[s] he has changed for the better since those problems occurred." (*Id.*)

Finally, Brandon's cousin writes to the Court, indicating that, within the family, "support for him remains steadfast," even in light of these egregious mistakes. (Exhibit F, Long Nguyen Letter.) Describing Brandon's challenging childhood, his cousin writes that "Brandon has always been a kind and goofy soul even with his rough childhood of being in and out of hospitals. I remember having playdates in his hospital room where one moment we're giggling playing [video games] and the next he's being taken away by nurses or physicians." (*Id.*) Through all of those challenges, Brandon remained kind and gentle. (*Id.*)

Of course, these generous reports of Brandon's character create a stark contrast when compared to his online conduct. And, as noted above, none of this history excuses the damage Brandon did to the victims. But the history does provide context. Brandon,

8

pressured to excel in school and under enormous stress as a result of childhood cancer, turned to the darkest escapism available to him as a teenager.

Brandon asks that these crimes be seen as a departure from his otherwise kind, steadfast, and gentle character; this conduct does not define who Brandon is, and he hopes that it will not foreclose every good possibility for him in the future. With that context in mind, Brandon asks the court to consider his personal history and his ownership of the effects of his offense when determining his sentence, granting a downward variance from the sentencing guidelines. *See* 18 U.S.C. § 3553(a).

## CONCLUSION

Brandon respectfully requests that this Court vary from the advisory guidelines range and impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing enunciated by Congress in 18 U.S.C. § 3553(a).

                                              Respectfully submitted,

Dated: August 15, 2023                 */s/ Heath M. Lynch*
                                              Heath M. Lynch
                                              Clinton W. Westbrook
                                              SBBL LAW, PLLC
                                              60 Monroe Center NW, Suite 500
                                              Grand Rapids, MI 49503